IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTON GORDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. H-18-1111 |
| DEREK MATHIESON, WILLIAM D. | § | |
| MARSH, ALAN CRAIN, MARTIN S. | § | |
| CRAIGHEAD, JAY MARTIN, | § | |
| BELGACEM CHARIAG, MARIO | § | |
| RUSCEV, and MARIA BORRAS, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING EMERGENCY MOTION TO REMAND**

**I.   Background**

Anton Gordon sued Baker Hughes Oilfield Operations, Inc. in July 2016, in Texas state court. (Docket Entry No. 1, ¶ 1). Gordon asserted state-law claims for race discrimination and retaliation under Texas Labor Code § 21.001, and misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.002. (Docket Entry No. 1-4, ¶ 6). On January 11, 2018, the state court granted Baker Hughes's motion to compel arbitration and granted Gordon's motion to amend his petition. *Id.*

Gordon's second amended petition omitted Baker Hughes as a defendant and brought a misappropriation-of-trade-secrets claim under the Texas Uniform Trade Secrets Act against Derek Mathieson, William D. Marsh, Alan Crain, Martin S. Craighead, Jay Martin, Belgacem Chariag, Mario Ruscev, and Maria Borras. All of the defendants are or were Baker Hughes employees. (Docket Entry No. 1-11, ¶¶ 2-9, 18).

1

Baker Hughes hired Gordon in April 2013 as a senior market research analyst. (Docket Entry No. 1-11 at ¶ 13). Gordon alleged that:

- he had independently developed a thesis for forecasting oil prices that was useful to Baker Hughes and was a basis for Gordon's employment, *id.*, ¶¶ 14-17;

- during his employment, he provided Baker Hughes with multiple forecasts, including forecasts of oil prices, outlooks for oil rig counts, and opinions on the factors driving oil prices, *id.*, ¶¶ 18-33;

- the forecasts were shared with Mathieson, Marsh, Crain, Craighead, Martin, Chariag, Ruscev, and Borras, without Gordon's consent, *id.*;

- the forecasts were trade secrets under the Texas Uniform Trade Secrets Act, *id.*, ¶ 22;

- he provided certain Baker Hughes employees with the forecasts based on representations that the company would use them to determine whether to promote him, but instead the defendants used the forecasts "to make millions of dollars worth of trades" for personal gain, through insider trading, *id.*, ¶¶ 19, 20, 21, 29, 41; and

- Mathieson, Ruscev, Marsh, Crain, Martin, Craighead, and Borras each used Gordon's trade-secrets (the forecasts), obtained through improper means (the misrepresentation as to the reason for getting the information), to commit unlawful insider trading, *id.*, ¶¶ 30-35, 42, 44.

In April 2018, the defendants removed to federal court. (Docket Entry No. 1). The defendants argue that this court has federal subject-matter jurisdiction because resolving Gordon's state-law misappropriation claim requires the court to determine whether the defendants used the allegedly misappropriated information for unlawful insider trading under the Securities Exchange Act of 1934 and Rule 10b-5. *Id.*, ¶¶ 6, 7. Gordon moved to remand, the defendants responded, and Gordon replied. (Docket Entry Nos. 4, 8, 9).

Based on the pleadings; the motion, response, and reply; the record; the applicable law; and the arguments counsel presented, Gordon's motion to remand is granted. The reasons for this ruling are set out below.

## II. The Legal Standard for Federal-Question Removal Jurisdiction

"Under th[e] 'well-pleaded complaint' rule, a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). "A federal question exists only where a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bd. of Comm'rs v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 2017) (quoting *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008)).

Although removal of "a case pleading only state-law claims" is appropriate if "the vindication of a right under state law necessarily turn[s] on some construction of federal law," *Bernhard*, 523 F.3d at 551 (quoting *Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983)), "[o]nly in a 'special and small category of cases' will federal jurisdiction exist when state law creates the cause of action. *Bd. of Comm'rs*, 850 F.3d at 721 (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). "That limited category of federal jurisdiction only exists" if the *Grable* test is met. *Bd. of Comm'rs*, 850 F.3d at 721-22 (quoting *Singh*, 538 F.3d at 338). "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. 251 at 258 (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005)).

## III. Analysis

Gordon makes two arguments for remand: first, that the removal was not timely; and second, and more importantly, that his petition does not require the court to decide a federal issue in order

to resolve any state-law claim. (Docket Entry No. 4, at 3). The defendants respond that their notice of removal was timely filed, and that Gordon's state-law misappropriation claim requires determining whether insider trading occurred, a federal question sufficient for jurisdiction. (Docket Entry No. 8, at 1, 16).

### A. Removal was Timely

A notice of removal must "be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. § 1446(b). "[A] named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 347-48 (1999).

Gordon argues that the "formal service" rule in *Murphy Bros.* should not be applied here. (Docket Entry No. 4 at 6). Gordon instead argues that the "receipt" rule from Justice Rehnquist's dissent in *Murphy Bros.* dissent should be applied. *Id.*; *Murphy Bros.* 526 U.S. at 357 (Rehnquist, J., dissenting) ("I believe that the receipt of this facsimile triggered the 30-day removal period under the plain language of 28 U.S.C. § 1446(b).").

Gordon's timeliness argument is unpersuasive, given the *Murphy Bros.* holding. The defendants' removal notice was timely filed. Formal service was on March 13, 2018, 28 days before removal and within the 30-day deadline under 28 U.S.C. § 1446(b). (Docket Entry No. 1-3 at 1).

### B. Gordon's State-Law Claim Does Not Give Rise to a Substantial Federal Question.

#### 1. The Texas Uniform Trade Secrets Act Applies.

4

Federal-question removal jurisdiction over Gordon's state-law claim for trade secret misappropriation exists only if deciding the claim requires deciding a disputed and substantial issue of federal law. *Bernhard*, 523 F.3d at 551. The Texas common-law misappropriation claim requires showing "(1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) use of the trade secret; and (4) damages." *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied). The "[Texas Uniform Trade Secrets Act] displaced the Texas common-law trade-secret doctrine." *Derrick Petroleum Servs. v. PLS, Inc*, No. H-14-1520, 2017 WL 3456920 (S.D. Tex. Aug. 11, 2017).

Gordon alleges that each defendant misappropriated one or more of the following alleged trade secrets[1]:

- the September 2013 global rig counts forecast[2], (Docket Entry No. 1-11, 28);

- the "early 2014 forecast[3], *id.*, 33;

- the January 2014 forecast[4], *id.*, 18; and

---

[1] Gordon alleges that he provided one May 2013 forecast to Baker Hughes in exchange for a promotion. (Docket Entry No. 1-11, ¶ 17). It is unclear if Gordon alleges that this forecast was misappropriated by any defendants, as with the later forecasts, or by other nonparty employees. As discussed below, even if the common-law applies, decision of a federal issue is not required.

[2] Gordon alleges he provided a forecast in September 2013. (Docket Entry No. 1-11, ¶ 28). It is unclear if Gordon is alleging the September 2013 forecast was provided in response to a May 2013 request, or that these were two separate forecasts. It is also unclear if Gordon alleges that the September 2013 forecast was misappropriated by any defendants or by "Baker Hughes management" in general.

[3] Gordon alleges this forecast was acquired and disclosed by Mathieson, and used by Mathieson, Martin and Borras. (Docket Entry No. 1-11, ¶ 33-35).

[4] Gordon alleges the January 2014 forecast was first disclosed by "Baker Hughes" to Mathieson, then by Mathieson to the other named defendants. (Docket Entry No. 1-11, ¶ 18). It is unclear if Gordon is alleging misappropriation of this forecast by Mathieson only, or by all named defendants.

5

- the February 2015 forecast[5], *id.*, 29.

The Texas Uniform Trade Secret Act Applies defines trade-secret misappropriation as:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who:

    (i) used improper means to acquire knowledge of the trade secret;

    (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

        (a) derived from or through a person who used improper means to acquire the trade secret;

        (b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

        (c) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret; or

    (iii) before a material change of the position of the person, knew or had reason to know that the trade secret was a trade secret and that knowledge of the trade secret had been acquired by accident or mistake.

Tex. Civ. Prac. & Rem. Code § 134A.002(3). "'Improper means' includes . . . misrepresentation . . . ." Tex. Civ. Prac. & Rem. Code at § 134A.002(2).

### 2. Deciding Whether the Forecasts are Protected as Trade-Secrets Does Not Require the Court to Decide a Federal Question.

Texas follows the Texas Uniform Trade Secret Act definition of trade-secret as:

(6) "Trade secret" means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether

---

[5] Gordon alleges that Mathieson obtained the forecast to make trades in April 2015. (Docket Entry No. 1-11, ¶ 30). Gordon alleges Ruscev made trades in May 2015, *id.*, ¶ 31, but it is unclear if Gordon alleges Ruscev used the April 2015 forecast to do so.

6

tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6); *Baxter & Assocs., L.L.C. v. D&D Elevators, Inc.*, No. 05-16-00330-CV, 2017 WL 604043 at * 26 (Tex. App.—Dallas Feb. 17, 2017, no pet. h.) ("[T]he common law rule has been displaced by [the Texas Uniform Trade Secrets Act.").

The defendants argue that determining whether the forecasts are trade secrets with independent value as confidential information requires deciding whether they were used for insider trading, which is regulated by federal statutes. (Docket Entry No. 8 at 7-8). The defendants' argument is interesting, but it is unpersuasive. The court need not decide a federal issue to decide if Gordon took reasonable measures to keep the forecasts secret, and need not decide whether insider trading occurred to determine if the forecasts had independent economic value.

Gordon alleges that the forecasts had independent economic value worth millions of dollars in cost savings to his employer, Baker Hughes, and Baker Hughes's employees, separate from and in addition to any use by individual employees in stock trading for personal gain. (Docket Entry 1-11, ¶¶ 17, 24). The value does not depend on whether the individual Baker Hughes employees named as defendants used the information for personal insider trading, or on whether their profit is the proper measure of the forecasts' value. Rather, the value depends on whether the information is not generally known to, or reasonably ascertainable by, "other persons" in general who *can* obtain

economic value from its use. *Baxter & Assocs.*, 2017 WL 604043 at *25-27. Gordon alleges that Baker Hughes itself was able to obtain significant economic value from the forecasts for reasons independent of any individual gain that might be made by using the forecasts for stock trades. (Docket Entry 1-11, ¶¶ 17, 24). That those "other persons"—the individual defendants—allegedly used the forecasts to obtain economic value by trading is not necessary to determine the existence of a trade secret. The court does not need to decide a federal question in deciding whether Gordon's forecasts are trade secrets under Texas law.

### 3. Deciding Whether Gordon's Alleged Trade-Secret was Misappropriated Does Not Require the Court to Decide a Federal Question.

Gordon argues misappropriation of a trade secret by acquisition, disclosure without consent, and use without consent. (Docket Entry No. 1-11, ¶¶ 41-45). To demonstrate misappropriation by disclosure and acquisition of his trade secret by misrepresentation, Gordon is not required to establish the use of the forecasts. Under the Texas Uniform Trade Secrets Act, misappropriation can be shown by acquisition, even without a demonstration of use. Civ. Prac. & Rem. § 134A.002(3)(A). Similarly, deciding Gordon's allegation that his forecasts were disclosed without his consent also does not require showing their use. *Id.* at § 134A.002(3)(B) ("disclosure *or* use of a trade secret without . . . consent") (emphasis added).

Nor does Gordon's trade-secret claim under § 134A.002(3)(B) require him to show that the use was illegal under federal law. "'Use' of a trade secret means commercial use, by which a person seeks to profit from the use of the secret. As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'" *Berge v. Republic Nat'l Inc.*, No. 3:17-CV-1367-D, 2018 WL 2267095, at *3 (N.D. Tex. May 17,

2018) (quotations and citations omitted). The Act does not require showing that the misappropriated trade secrets were used illegally, only that they were used after acquisition by "improper means." Tex. Civ. Prac. & Rem. Code § 134A.002(3).

Gordon alleges that the forecasts he developed were his trade secrets, that some of the defendants obtained the forecasts and disclosed them to others, and that all the defendants used them for personal benefit. (Docket Entry No. 1-11 at ¶ 41). Both the disclosure and use were without Gordon's consent. *Id.* Gordon alleges that the defendants falsely told him that they needed the forecasts to decide whether to promote him to a senior-management position. *Id.*, ¶ 19. He alleges that the true reason they asked for the forecasts was to use the information to engage in insider trading for personal enrichment. *Id.*, ¶ 42. That sufficiently alleges use after acquisition by improper means, which could establish misappropriation without showing that the defendants used the information to engage in improper insider trading.

The defendants cited *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F. 3d 1010 (2d Cir. 2014) to argue that when a trade secret is acquired by improper means (or by improper discovery under the common law), if the impropriety is a violation of federal law, then removal is proper. (Docket Entry No. 8 at 6-8). The defendants argue that determining whether Gordon's forecasts were misappropriated by defendants acting "improperly" will require the court to decide whether the forecasts were used for insider trading. (Docket Entry No. 8 at 6, 8). Because insider trading is governed by federal law, the defendants argue, a federal issue is necessarily raised. *Id.* at 2.

That argument is unpersuasive. Though Gordon describes the misrepresentations as being made for the purpose of "insider trading," *id.* at ¶¶ 29, 30, 32, 41, 42, it is the alleged misrepresentation to Gordon of the intended use (to consider him for promotion) that makes the

9

acquisition improper, not the subsequent use of the forecasts for insider trading. Tex. Civ. Prac. & Rem. Code § 134A.002(2), (3).

Because the Act does not define misrepresentation, the common-law definition applies. *Id.*, § 134A.007 (noting that the Act only "displaces conflicting . . . law"). To show misrepresentation with the intent of inducing disclosure of a trade secret, Gordon must show that: "(1) a material misrepresentation was made; (2) it was false; (3) when the misrepresentation was made, the speaker knew it was false or the statement was recklessly asserted without any knowledge of its truth; (4) the speaker made the false representation with the intent that it be acted on by the other party; (5) the other party acted in reliance on the misrepresentation; and (6) the party suffered injury as a result." *Spear Mktg. v. Bancorpsouth Bank*, NO. 3:12-CV-3583-B, 2013 WL 3297593 at *19 (N.D. Tex. 2013) (as applied to the now-displaced common-law trade-secret misappropriation claim). The court need not decide that Gordon's injury resulted from trades that were in violation of the securities laws, only that he suffered an injury. Because Gordon's state-law claim can be satisfied by establishing that his forecasts were trade secrets and acquired by misrepresentation, federal law is not a necessary element.

### 4. Calculating Damages for Gordon's Trade-Secret Misappropriation Claim Does Not Require the Court to Decide a Federal Question.

The defendants also argue that because Gordon alleges that the defendants' trades resulted in personal and unjust enrichment and calculates damages using the profits, the insider-trading issue must be resolved to calculate damages. (Docket Entry No. 8 at 8). But the Texas Uniform Trade Secrets Act does not require Gordon to show that the trades violated federal law in order to obtain or calculate damages for the alleged unjust enrichment. Tex. Civ. Prac. & Rem. Code § 134A.004(a)

("Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss."). Rather, the court may calculate the amount the defendants were unjustly enriched as a result of trades using Gordon's misappropriated trade secrets, regardless of the trades' legality.

Because Gordon's state-law trade-secret misappropriation claim does not necessarily raise a federal issue, and because no other basis for federal jurisdiction exists, remand is proper. *Bernhard*, 523 F.3d at 554. The court need not address Gordon's alternative argument that federal jurisdiction is improper because he lacks the standing to bring an insider-trading claim.

### IV. Conclusion

Gordon's state-law claim does not raise a federal issue. Gordon's motion for remand, (Docket Entry No. 4), is granted. This case is remanded to the 129th District Court, Harris County, Texas.

SIGNED on June 25, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge